# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD N. SAYLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:11-CV-461 |
| | ) |
| DR. L. BALL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on an amended complaint filed by Richard N. Sayles, a *pro se* prisoner, pursuant to 42 U.S.C. § 1983, on January 17, 2012 (DE# 7). For the reasons set forth below, the Court: (1) **GRANTS** the plaintiff leave to proceed against Dr. T. Allen in his individual capacity for compensatory damages for housing him without adequate heat, clothing, bedding, hygiene items, and sanitation between April 8, 2010, and April 19, 2010, in violation of the Eighth Amendment; (2) **DISMISSES** all other claims; (3) **DISMISSES** Defendants Dr. L. Ball and Officer C. Sipich; (4) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Dr. T. Allen; and (5) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), Dr. T. Allen to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE and N.D. IND. L.R. 10.1, only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

BACKGROUND

Richard N. Sayles, a *pro se* prisoner, filed this action on December 1, 2011. (DE #1.) His original complaint was stricken due to numerous deficiencies, and Sayles was granted leave to replead. (DE #4.) Sayles has since submitted an amended complaint. (DE #7.)

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b). In determining whether the complaint states a claim, the Court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. Thus,

the plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). The Court must bear in mind, however, that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Sayles first brings claims against Dr. T. Allen, a psychologist at Westville Correctional Facility ("Westville") and Dr. L. Ball, a psychiatrist at Westville and Dr. Allen's supervisor. (DE# 7 at 2.) He alleges that Dr. Allen had him confined in a "frigid" cell between April 8, 2010, and April 19, 2010, without any hygiene items and with no clothing except boxer shorts; he claims that for several days he was also without a toilet, bed, or sink. He further alleges that Dr. Ball "failed to stop" Dr. Allen from housing him under these substandard conditions. (*Id.*)

To state an Eighth Amendment claim, an inmate must satisfy both an objective and subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the

3

minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to be provided with adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

If the conditions alleged pass the objective inquiry, the Court must determine whether the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Here, as recounted above, Sayles claims that for approximately 11 days Dr. Allen had him confined in a cell without adequate heat, clothing, and hygiene items, and that for at least a portion of that time he was also without adequate bedding and sanitation. Giving Sayles the inferences to which he is entitled at this stage, he satisfies the objective prong of the Eighth Amendment inquiry. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (lack of proper bedding constituted denial of civilized measure of

life's necessities); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (inmate kept in cell without a mattress or hygiene items for six days satisfied objective prong of Eighth Amendment analysis); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (prisoner stated Eighth Amendment claim where he was kept in a cell without adequate heat, among other conditions).

With respect to the subjective prong, the complaint is not particularly detailed, but it can be plausibly inferred that Dr. Allen was aware of these conditions; the complaint can be read to allege that Dr. Allen purposefully housed him under these conditions to punish him and not for any legitimate purpose. Giving Sayles the inferences to which he is entitled at this stage, he has stated enough to proceed against Dr. Allen.

Sayles also claims that Dr. Ball failed to intervene to stop Dr. Allen's actions. (DE #7 at 1.) However, there is nothing in the complaint from which it can be plausibly inferred that Dr. Ball was involved in Dr. Allen's decision or even aware of it, other than that he is Dr. Allen's supervisor. Liability cannot be premised on the mere fact that Dr. Ball is Dr. Allen's supervisor, as there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks v. Raemisch,* 555 F.3d 592, 594-95 (7th Cir. 2009). Sayles makes clear that it was Dr. Allen who made the decision to house him under the alleged substandard conditions, and under 42 U.S.C. § 1983, public officials can be held liable "for

5

their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 595. Accordingly, the claim against Dr. Ball will be dismissed.

Sayles separately claims that Dr. Ball improperly discontinued his Zoloft in retaliation for grievances that he filed in 2010 and 2011. (DE #7.) This is Sayles's second attempt to plead his claims, but he still does not state a plausible retaliation claim against Dr. Ball. Under the First Amendment, prison staff cannot retaliate against a prisoner for filing a non-frivolous grievance. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). Sayles does not provide any details surrounding the discontinuation of his medication, but a document he attaches to his complaint indicates that he refused an appointment with Dr. Ball in September 2011, and that as a result Dr. Ball was unable to renew his medication. (DE #7 at 5.) The document indicates that Dr. Ball was concerned he could not examine Sayles and assess his response to the medication and any possible side effects he might be experiencing. (*Id.*) Sayles does not provide any response or explanation to undercut this legitimate reason why he did not receive his medication. Nor does he provide any detail about how the lack of medication affected him or how long he was without it. This same document indicates that he was seen by medical staff on October 13, 2011, and did not express any immediate needs or concerns. (DE #7 at 5.)

Furthermore, Sayles also does not provide any detail about the

grievances he filed for the Court to determine whether they were non-frivolous, such that they were entitled to constitutional protection. *See Hoskins*, 395 F.3d at 375. The mere fact that Sayles filed grievances at some point over the course of a year and Dr. Ball thereafter discontinued his medication is not enough to state a claim. *See Swanson*, 614 F.3d at 403. Suspicious timing alone cannot establish a claim of retaliation, nor is the timing here particularly suspicious given that Sayles filed some of the grievances a year before Dr. Ball's decision. *See Smith v. Dunn*, 368 F.3d 705, 708 (7th Cir. 2004). Based on the allegations in the complaint, Sayles has not alleged a plausible First Amendment retaliation claim against Dr. Ball.

Sayles next alleges that Officer C. Sipich, a guard at Westville, "conspired" with Dr. Allen to falsify a conduct report accusing him of possessing a dangerous weapon. (DE #7 at 1.) He claims that as a result of this he was transferred to another correctional facility. (*Id.*) As explained in *Sandin v. Conner*, 515 U.S. 472, 485 (1995), "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* Thus, a disciplinary case resulting in a transfer does not implicate a federally protected liberty interest "even if it was fabricated." *Hoskins*, 395 F.3d at 375.

Sayles also claims that his rights were violated in connection

7

with the transfer because he was not afforded a hearing in accordance with "IDOC Policy and Federal Mandates." (DE #7 at 1.) The fact that prison officials may have violated internal prison policy by failing to afford him a hearing does not give rise to liability under 42 U.S.C. § 1983. *See Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state statutes or administrative regulations).

Furthermore, the federal Due Process Clause does not protect against every change in the conditions of confinement having an adverse impact on a prisoner. *Sandin,* 515 U.S. at 484. Nor does an inmate have a due process right to be housed in any particular correctional facility or the facility of his choice. As the United States Supreme Court has explained:

> The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

8

*Meachum v. Fano*, 427 U.S. 215, 224 (1976) (emphasis in original); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (observing that inmate had "no due process right to the correctional facility of his choice.").

Instead, a prisoner is entitled to due process protections only when the conditions imposed work an "atypical" and "significant" hardship on him in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. Even transferring a prisoner from the general population to a segregation unit does not present an atypical, significant deprivation and is "within the expected parameters of the sentence imposed by a court of law." *Id.* at 485. An inmate may be able to state a claim by showing that he was transferred to a significantly harsher and more restrictive setting, *see Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009), but Sayles provides no detail about the conditions at the facility where he was transferred. Indeed, at some point Sayles must have been transferred back to Westville, as his filings indicate that he was housed there when he initiated this action in December 2011. (*See* DE #1 at 1; DE #7 at 1.) The mere fact that Sayles was transferred to another facility without a hearing does not give rise to a due process claim. Accordingly, this claim must be dismissed.

CONCLUSION

9

For the reasons set forth above, the Court:

(1) **GRANTS** the plaintiff leave to proceed against Dr. T. Allen in his individual capacity for compensatory damages for housing him without adequate heat, clothing, bedding, hygiene items, and sanitation between April 8, 2010, and April 19, 2010, in violation of the Eighth Amendment;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Defendants Dr. L. Ball and Officer C. Sipich;

(4) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Dr. T. Allen; and

(5) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), Dr. T. Allen to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE and N.D. IND. L.R. 10.1, only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

DATED: February 1, 2012          /s/ RUDY LOZANO, Judge
                                                     **United States District Court**