**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| RICHARD N. SAYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:11-CV-461 |
| | ) | |
| DR. THOMAS ALLEN, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment, filed by the sole remaining defendant, Dr. Thomas Allen, on December 13, 2012 (DE #48). For the reasons set forth below, the motion (DE #48) is **GRANTED**, and the Clerk is **DIRECTED** to enter judgment in favor of Dr. Thomas Allen. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

Richard Sayles ("Sayles"), a *pro se* prisoner, was granted leave to proceed on a claim against Dr. Thomas Allen ("Dr. Allen"), formerly the lead psychologist at Westville Correctional Facility ("Westville"). Sayles alleges that Dr. Allen was deliberately indifferent to his needs by housing him in a cell without adequate clothing, bedding, and sanitation between April 8, 2010, and April 19, 2010. (DE #11.) Dr. Allen moves for summary judgment, arguing

that he was not deliberately indifferent to Sayles's needs and, instead, placed him in a cell under suicide watch for his own protection. (DE #49.)

Sayles was given proper notice of the motion (DE #50), making his response due on or before January 10, 2013. *See* N.D. IND. L. R. 56.1(b). More than 30 days have passed since that deadline, and no response has been received. Since the motion was filed, Sayles has sent the Court two documents. (DE ##53, 58.) In one, he asserts that all defendants involved in this and his other pending lawsuits, the attorneys representing them, and the Judges presiding over those cases "must be assasonated [sic] under contract." (DE #53.) In the other, he complains about the handling of his legal mail by correctional staff.[1] (DE #58.) Neither of these documents are responsive to the pending motion for summary judgment.

Pursuant to N.D. IND. LOCAL RULE 7-1(d)(4), a party's failure to file a response within the time prescribed may subject the motion to summary ruling. Sayles has failed to file a response, despite being warned about the consequences of failing to do so. (DE #50.) Nevertheless, "[s]trict enforcement of [local rules and deadlines]

---

[1] Several items of mail sent to Sayles have been returned from the correctional facility with the notation that Sayles refused it. (*See* DE ## 42, 54, 57, 59.) Sayles appears to claim that he did not actually refuse any mail. (*See* DE #58.) Regardless, the docket reflects that Sayles has had no difficulty filing documents with the Court at any time during this case. As stated above, he did not file a response to the motion for summary judgment, nor did he request additional time to do so.

does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted." *Id.* The Court still must "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on

3

allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Undisputed Facts

During the dates at issue in this lawsuit, Sayles was incarcerated at Westville. (DE # 51-2, Allen Aff. ¶¶ 3-5.) At that time, Dr. Allen was the lead psychologist at that facility. (DE #51-2, Allen Aff. ¶ 3.) While at Westville, Sayles was treated for chronic depression, including being prescribed psychiatric medication, and was under the care of medical staff for other chronic medical conditions.[2] (*See* DE #51-3 at 1.) On April 9, 2010, Sayles had a chronic care appointment scheduled with Dr. Joseph Thompson, a prison physician. (*Id.*) The exam could not be completed, however, because Sayles became angry, called the nurse a "bitch," and said "fuck you nigger" to Dr. Thompson. (*Id.*)

Shortly thereafter, Sayles was placed on close observation after he submitted a health care request that contained suicidal

---

[2] Medical records reflect that as of April 2010, Sayles was being treated for depression as well as Hepatitis C, high cholesterol, acid reflux, and other health conditions. (*See* DE #51-3 at 1.)

4

references. (DE #51-2, Allen Aff. ¶ 6.) On April 13, 2010, Sayles was found by correctional officers lying face down in his cell and unresponsive with blood coming from his nose. (*Id.;* DE #51-5 at 9.) Officers also found a 5-foot noose Sayles had constructed out of toilet paper. (DE #51-5 at 9-13.) Sayles was taken by ambulance to an outside hospital for evaluation. (*Id.* at 10.) A chest x-ray and head CT scan were found to be normal, as was his blood work. (DE #51-6.)

Sayles was released from the hospital and returned to the prison later that evening, at which point he was placed on suicide watch per Dr. Allen's order. (DE #51-2, Allen Aff. ¶ 7.) Inmates on suicide watch are checked on every 15 minutes by correctional staff, are provided with paper boxers, a suicide blanket, and a mattress, and receive sack meals with no utensils. (*Id.* ¶¶ 14; DE #51-4, Schrader Aff. ¶¶ 6-8.) They have access to water, showers, and are either let out to use the restroom or are provided with a toilet in their cells. (DE #51-2, Allen Aff. ¶ 14.) These conditions are not meant to punish the inmate, but are meant to limit the inmate's environment so that he cannot harm himself. (*Id.*)

On April 16, 2010, Sayles was seen by Daniel Knaver, a licensed clinical social worker. (DE #51-3 at 4.) Knaver asked Sayles how he was doing, but Sayles waived his hand, laid down on his bed, and ignored further inquiries. (*Id.* at 5.) On that same

date, Sayles was seen by Dr. Allen. (*Id*. at 7.) The doctor noted that Sayles was "hostile" and did not want to talk. (*Id.* at 9.) He further noted that Sayles was not able to understand or agree to refrain from harmful action, that his mood was depressed, his appearance disheveled, and his reasoning, insight, and impulse control poor. (*Id.* at 8-9.) Because Sayles was uncooperative and would not agree to refrain from harming himself, Dr. Allen did not believe it was safe to return him to a regular cell. (DE #51-2, Allen Aff. ¶ 11.)

At that point, Dr. Leonard Ball, the prison psychiatrist, made a recommendation that Sayles be transferred to the crisis stabilization unit at New Castle Correctional Facility ("New Castle") so that he could receive long-term, acute psychiatric care. (*Id.* ¶ 10.) Dr. Allen agreed with this recommendation, in light of Sayles' threats of self-harm, his refusal to agree to refrain from harming himself, and the noose found in his cell. (*Id.* ¶ 11.) Pending the transfer, Dr. Allen ordered continued monitoring by staff, and also met with Sayles on April 19, 2010, noting that he was in the process of being transferred. (*Id.* ¶ 10; DE #51-3 at 15.) On April 20, 2010, Sayles was transferred to New Castle. (DE #51-3 at 18-26.)

While Sayles was on suicide watch at Westville, correctional staff checked on him every 15 minutes. (DE #51-4, Schrader Aff. ¶ 6.) The officers' notes from April 14, 2010, indicate that

6

Sayles was observed eating, using the bathroom, laughing, and talking with correctional staff. (DE #51-5 at 1-2.) Their notes from April 15, 2010, reflect that throughout the day Sayles was observed sitting, talking to staff, eating, and using the bathroom. (*Id.* at 3.) Their notes from April 16, 2010, and April 17, 2010, reflect that Sayles was observed sitting, talking with staff, using the restroom, eating, lying down, and reading his mail. (*Id.* at 4-6.) Their notes from April 18, 2010, reflect that Sayles was seen sitting down, talking with staff, eating, lying down, and using the restroom and shower. (*Id.* at 7.) Their notes from April 19, 2010, reflect that he was observed sitting, talking with staff, using the restroom, eating, and lying down. (*Id.* at 8.)

Analysis

"[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but under the Eighth Amendment inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). To establish Eighth Amendment liability, a prisoner must satisfy both an objective and subjecting component by showing: (1) he was denied the minimal civilized measure of life's necessities; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834

(1994). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citation omitted).

Inmates are also entitled to adequate medical care for serious medical needs, including psychiatric disorders. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 671 (7th Cir. 2012). For a medical professional to be held liable for deliberate indifference to a serious medical need, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical practice, since "the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). An inmate who has received some form of treatment for a medical condition must show that the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to

seriously aggravate his condition." *Id.*

Here, the undisputed facts show that Sayles has a diagnosed mental condition for which he has been prescribed psychiatric medication. (DE #51-3 at 1; DE #51-2, Allen Aff. ¶¶ 3-5.) He was placed in a cell on suicide watch for his own protection after he was found unresponsive in his cell, along with a noose he had constructed out of toilet paper. (DE #51-2, Allen Aff. ¶ 7; DE #51-5 at 9-13.) He received prompt evaluation and treatment at an outside hospital, and his diagnostic tests were found to be normal. (DE #51-5 at 1-13.) While Sayles was on suicide watch, he was uncooperative with mental health staff and would not give Dr. Allen assurances that he would not injure himself. (DE #51-3 at 4-9; DE #51-2, Allen Aff. ¶ 11.) In Dr. Allen's professional opinion, these circumstances made it unsafe to return Sayles to a regular cell. (DE #51-2, Allen Aff. ¶ 11.) During the six days he was on suicide watch, Sayles had paper boxers, a blanket, a mattress, received sack meals, and had regular access to restroom and shower facilities. (DE #51-2, Allen Aff. ¶ 14; DE #51-4, Schrader Aff. ¶¶ 6-8.) During this period he was observed by prison staff eating, resting, talking to staff, laughing, reading his mail, lying down, showering, and using the restroom. (DE #51-5 at 1-8.)

Although the conditions Sayles experienced may not have been pleasant or comfortable, in Dr. Allen's professional opinion they were necessary for his own safety. (DE #51-2, Allen Aff. ¶ 11.)

9

Sayles has not offered any contrary evidence to demonstrate that Dr. Allen's actions constituted "such a substantial departure from accepted professional judgment, practice, or standards," as to amount to deliberate indifference. *Jackson*, 541 F.3d at 697. Nor has he established that he was denied the minimal civilized measure of life's necessities. Indeed, once Dr. Allen and other prison staff were on notice that Sayles presented a risk of suicide, they were required to take steps to prevent him from injuring himself. *See Miller v. Harbaugh,* 698 F.3d 956, 960 (7th Cir. 2012); *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001). The record reflects that they took prompt and appropriate steps to ensure Sayles' health and safety. Under these circumstances, Sayles has not established a violation of his Eighth Amendment rights, and Dr. Allen is entitled to summary judgment in his favor.

CONCLUSION

For the reasons set forth above, the motion for summary judgment (DE #48) is **GRANTED,** and the Clerk is **DIRECTED** to enter judgment in favor of Dr. Thomas Allen. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.

DATED: February 19, 2013 /s/ RUDY LOZANO, Judge
**United States District Court**